Dimitri L. Karapelou, Esquire
Law Offices of Dimitri L. Karapelou, LLC
Two Penn Center, Suite 920
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
(T): (215) 391 – 4312
(F): (215) 701 – 8707
dkarapelou@karapeloulaw.com
Counsel for Plaintiffs

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRIAN L. ALLEN**<br>591 Sweetbriar Road<br>Wellsboro, PA 16901<br><br>*and*<br><br>**DALE E. ALLEN**<br>541 Sweetbriar Road<br>Wellsboro, PA 16901<br><br>*and*<br><br>**SANDRA B. ALLEN**<br>541 Sweetbriar Road<br>Wellsboro, PA 16901<br>                              *Plaintiffs*,<br><br>vs.<br><br>**SWEPI, LP**<br>200 North Dairy Ashford, Suite 8<br>Houston, TX 77079<br>                              *Defendant.* | **CIVIL ACTION NO:** |

**COMPLAINT**

Now comes Plaintiffs, Brian L. Allen, Sandra B. Allen, and Dale E. Allen (hereinafter referred to as "Plaintiffs"), by and through their undersigned counsel, Law Offices of Dimitri L. Karapelou, LLC, and files this Complaint against Defendant SWEPI, LP (hereinafter referred to as "Defendant") and in support thereof, aver as follows:

## PARTIES

1. Plaintiff Brian L. Allen is an individual having an address of 591 Sweetbriar Road, Wellsboro, PA 16901.

2. Plaintiff Dale E. Allen is an individual having an address of 541 Sweetbriar Road, Wellsboro, PA 16901.

3. Plaintiff Sandra B. Allen is an individual having an address of 541 Sweetbriar Road, Wellsboro, PA 16901.

4. Defendant SWEPI, LP is a limited partnership organized and operating under the laws of Delaware having a corporate address of 200 North Dairy Ashford, Suite 8, Houston, TX 77079.

## JURISDICTION AND PROCEDURAL HISTORY

5. Jurisdiction is based on diversity of citizenship under 28 U.S.C § 1332(a).

6. The amount in controversy exceeds $75,000 exclusive of interest and cost.

7. This action is for breach of contract and breach of covenant of good faith and fair dealing under Pennsylvania Law.

## FACTS

8. Plaintiffs are the owners of real property located at 591 Sweetbriar Road, Wellsboro, Tioga County, Pennsylvania (the "Property"). The Property is separated into 2 large parcels of land. This lawsuit concerns a 148 acre parcel.

9. Plaintiffs operate a farm on the Property and sell dairy and other agricultural products. Plaintiffs also maintain a personal residence on the Property.

10. Plaintiffs and Defendant (through Defendant's predecessors in interest) agreed to a series of oil and gas leases from 2005 through 2009.

11. The oil and gas leases were agreed to during a period of intense exploration of oil and gas in the Marcellus Shale region.

12. In this time period, oil and gas companies frequently hopped from one property to another as they frantically moved to convince landowners to sign documents granting the oil gas companies rights to valuable underground mineral resources.

**THE OIL AND GAS LEASES BETWEEN PLAINTIFFS AND DEFENDANT**

13. Plaintiffs and Defendants entered into a series of leases, amendments of leases and other lease modifications, alterations and supplements, which are listed below.

14. Plaintiffs attach hereto as Exhibit "A" a true and correct copy of a 2005 Paid Up Oil & Gas Lease dated August 8, 2005 for that certain piece of real property (the "Property") located at Tax Lot #4-7-11 Tioga County, Pennsylvania (the "2005 Lease"). This parcel of land comprises 148 acres and is the subject of this lawsuit.

15. Plaintiffs attach hereto as Exhibit "B" a true and correct copy of a 2008 Memorandum of Lease dated July 18, 2008.

16. Plaintiffs attach hereto as Exhibit "C" a true and correct copy of a 2008 Paid Up Oil & Gas Lease date July 18, 2008 (the "2008 Paid Up Lease").

17. Plaintiffs attach hereto as Exhibit "D" a true and correct copy of a 2008 addendum to Paid Up Oil & Gas Lease dated July 18, 2008.

18. Plaintiffs attach hereto as Exhibit "E" a 2008 Right Way of Agreement dated July 18, 2008.

19. Plaintiffs attach hereto as Exhibit "F" a 2008 Agreement to Amend Oil & Gas Lease dated July 18, 2008

20. Plaintiffs attach hereto as Exhibit "G" a 2009 Amendment and Ratification of Oil & Gas Lease effective March 28, 2009 (the 2009 Amendment to Paid Up Lease").

## COUNT I
## Breach of Contract

21. Plaintiffs incorporate the averments in the preceding paragraphs as if fully set forth at length herein.

22. Plaintiffs and Defendant are parties to a lease titled: Paid UP Lease, dated July 18, 2008 and attached hereto as Exhibit "C."

23. Pursuant to the 2008 Paid Up Lease, Defendant agreed to make a Rental Payment to Plaintiffs as follows:

> **(6) Rental Payment – <u>This lease is made on the condition that within sixty (60) days from the Effective Date of this lease, Lessee shall pay to the Lessor the sum of Two Thousand Dollars ($2,000) per acre for the first year.</u> Thereafter, if operations for drilling are not commenced on leased premises or on acreage pooled therewith on or before one (1) year from the Effective Date hereof, this lease shall terminate as to both parties unless on or before such Effective Date Lessee shall pay or tender to the Lessor the sum of Five Dollars ($5.00) per acre, (herein called delay rental), which shall cover the privilege of deferring commencement of drilling operations for a period of twelve months. In like manner and upon like payment the commencement of drilling operations may be further deferred for successive periods of twelve months during the primary term hereof. (emphasis added).**

24. The 2008 Paid Up Lease was amended and the amount of the Rental Payment per acre was reduced to $1,500. See Exhibit "G."

25. The Effective Date of the 2008 Paid Up Lease according to its terms was August 30, 2010.

26. For purposes of brevity, this obligation to pay $222,000, called a Rental Payment in the 2008 Paid Up Lease, is sometimes hereinafter referred to as the "bonus."

27. Indeed, on July 22, 2010, Defendant delivered a check for $222,000 to Plaintiffs in attempted compliance with performance for this 2008 Paid Up Lease, but six (6) days later stopped payment on the check. See Exhibit "H", copy of check.

28. Despite repeated demands, Defendant has not replaced the check and thus it has breached the 2008 Paid Up Lease for lack of performance.

29. Prior to this lawsuit, through communications between counsel for the parties, Defendant asserted that it did not have any contractual obligation to pay the bonus under the 2008 Paid Up Lease because it was a top lease to the 2005 Lease. Defendant asserted that the 2008 Paid Up Lease never became effective, and thus no bonus became due and owing, because Defendant was involved in drilling operations at the Property under the 2005 Lease which extended its term from 2010 through 2015.

30. Defendant's assertions do not invalidate or otherwise impede Plaintiffs' rights to collect what is owed on the 2008 Paid Up Lease.

31. Plaintiffs aver that from 2008 through 2011, Defendant was not engaged in any drilling operations (as defined in the 2005 Lease) that would have extended the 2005 Lease through its stated expiration and otherwise made the 2008 Paid Up Lease ineffective. No continuous drilling activity occurred or could have occurred because no pipeline was built to transport gas off the Property.

32. The 2005 Lease defines the term of the lease as follows:

**2. *Term* Subject to the other provisions hereof, this lease shall remain in force for a term of Five (5) years from this date (herein called "primary term") and as long thereafter as oil and gas, or either of them, is produced from the land or drilling operations are continuously prosecuted as hereinafter provided. "Drilling Operations" include operations for the drilling of a new well, the reworking, deepening or plugging back of a well or hole or other operations conducted in an effort to obtain or reestablish production of oil or gas. Drilling operations shall be considered to be "continuously prosecuted" if not more**

**than 90 days shall elapse between the completion or abandonment of one well or hole and the commencement of drilling operations on another well or hole.**

33. Defendants were not engaged in the continuous prosecution of drilling operations and so the original five (5) year term was not extended.

34. Because Defendants were not engaged in the continuous prosecution of drilling operations under the 2005 Lease, the 2008 Paid Up Lease became effective, and this triggered the Defendant's obligation to perform and pay the bonus.

35. Even if Defendant was engaged in drilling operations that extended the expiration of the 2005 Lease, the 2008 Lease expressly provides that the $222,000 Rental Payment is due and payable within 60 days from the Effective Date of the 2008 Paid Up Lease. The Effective Date is a fixed date that is not contingent on any conditions. Put differently, the promise to pay the bonus is a firm clause which provides that the $222,000 is due by a date certain - when the lease becomes effective - and the lease became effective according to its terms within 60 days of August 30, 2010.

36. Defendant's assertions that this is a top lease which never became effective is an attempt by Defendant's to apply a meaning and interpretation to the contract in ways that do not reconcile with the clearly stated terms of the contract.

37. As a result of Defendant's breach of the 2008 Paid Up Lease, Defendant owes Plaintiffs the sum of $222,000 plus consequential damages, interest, attorney's fees and court costs.

38. Because of Defendants refusal to pay the bonus, Plaintiffs became strapped for cash, fell behind in their mortgage payments for the Property owed to Citizens & Northern Bank, and were forced to file for bankruptcy to stop a foreclosure action. The Plaintiffs filed for bankruptcy under chapter 12 of the United States Bankruptcy Code in the Middle District of Pennsylvania, case no. 12-1378.

39. The Plaintiffs successfully reorganized their assets and liabilities, confirmed a plan of reorganization and exited the bankruptcy in 2017.

40. The Plaintiffs did not initiate any action against Defendants in the bankruptcy, due, in part, to the Defendants representations to Plaintiffs that the bonus would be paid and/or that a new lease would be signed with a bonus or other cash payment incentive.

41. From 2012 through 2015, Defendant made at least three (3) oral promises to Plaintiffs specifically offering to pay if no drilling production (extraction) occurred at the Property. To Plaintiffs, this promise made sense. They would wait to see if any drilling occurred, and if no drilling occurred, they would finally receive the cash bonus.

42. It was impossible during this time period for any continuous drilling to occur since a pipeline to carry the gas had not been built. Plaintiffs' accepted the promises, knowing that they would receive the bonus, and possibly more, in the form of royalties, should a pipeline be built in the future.

43. Defendant used the promise of future payment as a means to lull Plaintiffs into not taking any action (such as filing a lawsuit). In retrospect, it now is clear that Defendant never intended to pay the bonus. Had Defendant not made the promise of future payment, Plaintiffs would have certainly filed a lawsuit for breach of contract.

44. Plaintiffs attach hereto as Exhibit "I" a copy of their business notes, taken contemporaneously with their conversations with Defendant, and which record the events, circumstances and details surrounding these promises.

45. Each oral promise acted to toll any existing statute of limitations or remove the bar.

46. Pennsylvania law provides that a statute of limitations is tolled or removed when a party makes a promise to pay a debt. *Huntingdon Fin. Corp. v. Newtown Artesian Water Co.*, 659 A.2d 1052, 1054 (Pa. Super. Ct. 1995).

WHEREFORE, Defendants demand judgment against Plaintiffs in the amount of $222,000 plus interest, consequential damages, attorney's fees and court costs.

## COUNT II

### Breach of Covenant of Good Faith and Fair Dealing

47. The Plaintiffs incorporate the averments in the preceding paragraphs as if set forth fully at length herein.

48. The Lease, by virtue of Pennsylvania law contained an implied covenant of good faith and fair dealing.

49. Defendant induced Plaintiffs to sign the 2008 Paid Up Lease by promising to pay a large cash bonus.

50. Plaintiffs signed the 2008 Paid Up Lease because it contained a large cash bonus. Without the bonus, there was no financial incentive for Plaintiffs to sign the 2008 Paid Up Lease.

51. After the 2008 Lease was signed, Defendant sent Plaintiffs a check for the bonus then stopped payment. The check contains a notation and acknowledgment that the 2008 Paid Up Lease became effective on August 30, 2010.

52. The bonus was inserted into the 2008 Paid Up Lease as an express condition and for the sole purpose of inducing Plaintiffs into the transaction.

53. On or about July 30, 2010, about one month before the 2005 Lease was set to terminate (August 30, 2010), Defendant recorded a Declaration of Pooling and Utilization including the Property in a pooling territory (the "Pooling Declaration"). See attached, Exhibit J.

54. Plaintiffs did not give their consent to Defendant to record the Pooling Declaration.

55. Defendant recorded the Pooling Declaration at the last minute to try and extend the 2005 lease so Defendant would not have to pay the bonus under the 2008 Paid Up Lease. Plaintiff recorded the Pooling Declaration after stopping payment on the $222,000 check.

56. Defendant's conduct in recording the Pooling Declaration on July 30, 2010 was done in bad faith because Defendant knew that it had the obligation to pay the bonus, as is evidenced by the $222,000 check it sent to Plaintiffs on or about July 22, 2010.

57. Defendant made several promises to Plaintiffs from 2012 through and including 2015 to pay the bonus. Defendants never paid the bonus.

58. Defendant's intentional acts violated the purpose and intent of the leases, which was to incentivize Plaintiffs to give up their gas rights in exchange for the bonus.

59. Defendant's conduct, as egregious as it was, did not change, alter or modify Defendant's obligations to pay the bonus. The Pooling Declaration did not extend the term of the 2005 Lease because no actual drilling activity or production occurred on the Property at that time. And, if even there was activity, there was no continuous drilling as that is defined in the lease. The mere recording of a document in the public land records is insufficient to constitute drilling activity or production.

60. In a separate and unrelated lawsuit, *Keith L. Crain and Karen J. Crain v. Chesapeake Appalachia, L.L.C., et al,* United States District Court Middle District of Pennsylvania, No. 3:12-cv-2343, the plaintiff brought claims, similar to those here, alleging that the defendant owed a cash bonus and could not avoid this by recording a bogus pooling declaration. The Crain lawsuit is likely one of many similar cases where gas companies had acted in bad faith to deprive landowners of their cash bonuses. The Crain lawsuit settled, and although

the terms are unknown, it demonstrates that the gas companies recognize the potential liability for their wrongful acts committed during this period of 2008-10.

61. Separately, Defendant paid Plaintiffs the sum of $76,770 as a bonus for a 51 acre gas lease that was for a parcel of land owned by Plaintiffs and adjacent to the parcel of the subject Property. By making payment on this paid up lease for the 51 acre parcel, which was executed around the same time as the leases for the 148 parcel, Defendant through its own conduct demonstrates that there was no reason for Defendant not to pay the bonus on the 148 parcel. The leases for the 51 acre and 148 acre parcels contain similar terms and conditions as they pertain to Defendant's contractual obligations to pay the bonus. See attached Exhibit "K."

WHEREFORE, Defendants demand judgment against Plaintiffs in the amount of $222,000 plus interest, consequential damages, attorney's fees and court costs.

### COUNT III – Promissory Estoppel

62. The Plaintiffs incorporates the averments in the preceding paragraphs as if set forth fully at length herein.

63. By signing the leases, the Plaintiffs relied on the representations and promises that Defendant made in the leases regarding the bonus.

64. Plaintiffs are entitled to rely on the promises Defendant made in the leases.

65. By relying on the promises made in the leases, and not receiving the bonus, Plaintiffs lost valuable economic opportunities to sell the gas rights to the Property.

WHEREFORE, Defendants demand judgment against Plaintiffs in the amount of $222,000 plus interest, consequential damages, attorney's fees and court costs.

### COUNT IV- DISPARAGEMENT OF TITLE

66. The Plaintiffs incorporate the averments in the preceding paragraphs as if set forth fully at length herein.

67. The Defendant has recorded the leases in the Office of the Recorder of Deeds for Tioga County.

68. These leases are a cloud on title to the Property.

69. The leases affect Plaintiffs' rights to convey, borrow against or otherwise derive full use and enjoyment of the economic value of this Property.

WHEREFORE, Defendants demand judgment against Plaintiffs in the amount of $222,000 plus interest, consequential damages, attorney's fees and costs and for a court order directing the Tioga County Office of Recorder of Deeds to remove all recorded leases from title.

> Respectfully Submitted,
>
> _/s/   Dimitri L. Karapelou_
> Law Offices of Dimitri L. Karapelou, LLC
> Two Penn Center, Suite 920
> 1500 John F. Kennedy Boulevard
> Philadelphia, PA 19102
> Attorney for Plaintiffs

**Date: June 8, 2018**